**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2023 SEP 14  AM 9: 52

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

Civil Action No.  _____

(To be supplied by the court)

Kenneth Sorak, Plaintiff

vs.

THERESA CISNEROS in her official capacity as Senior Judge;

AMANDA BRADLEY in her official capacity as Magistrate;

COLORADO JUDICIAL BRANCH; Defendants

## COMPLAINT

### No Jury Demand

1. This action seeks monetary damages because of the Defendant Judicial Officers and the Colorado Judicial Branches' wrongful usurpations of Plaintiff's Constitutional rights through deprivation of due process, access to the law, protection under the law, and civil liberties and property. Plaintiff alleges that all of the Defendants acted under color of state law and violated Plaintiff's rights under the 1st, 4th, 6th, 8th and 14th Amendments to the Constitution of the United States and 5 United States Codes. Plaintiff also brings 8 state law claims pursuant to this Court's supplemental jurisdiction. As a proximate result of Defendants' actions, Plaintiff has been deprived of his civil liberties in light of evidence that would have exonerated him had it been allowed to be considered under his right to be heard, resulting in the deprivation of his property post-divorce, and has suffered extreme embarrassment, shame, anxiety, and mental distress all due to lack of evidence and suppression of the right to be heard and unduly punished by officers of the court willing to knowingly give false testimony to commit fraud. Due to Judge Cisneros' suppression of Plaintiff's exhibits and testimony, the Court was not allowed to be informed of the Petitioner's material claims to be knowingly false and adjudicated as perjury in violation of 18 USC 1621 and CRS 18-8-502. These items are 18 USC 1341 Fraud and led to 18 USC 1951 Extortion of the Plaintiff's civil liberties and personal property. In addition, 18 USC 1505 Obstruction and 18 USC 1001 False Statements were committed with proof in email form to the PRE on this case.

### Jurisdiction

2. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331, 1343 and re *"Keith Haywood vs Curtis Drown", 556 US 729 (2009)*. The Court has supplemental jurisdiction over parts of the Plaintiff's first claim, which is based in part on state law, under

28 USC § 1367. Judicial exhaustion is not a prerequisite as in re *"Monroe vs. Pape"*, 365 US 167 183 (1961) and administrative re *"Patsy vs. Fl. Board of Regents"*, 457 US 496, 501 (1982).

3. Venue in the United States District Court for the District of Colorado is proper pursuant to 28 USC § 1391 and re *"Howlett vs, Rose"*, 496 US at 382-383 (1990).

### Parties

4. Plaintiff: Kenneth Sorak, contacted at 3890 Chimayo Rd., Littleton, CO 80123, and (303) 990-4643 or kensorak@hotmail.com.

5. Defendants: Amanda Bradley, contact at 7325 S. Potomac St., Centennial, CO 80112 and (303) 645-6728.

   Theresa M. Cisneros, contact at 4000 Justice Way, Castle Rock, CO 80109.

   Colorado Judicial Branch, contact at 2 E. 14th Ave., Denver, CO 80203 and (720) 625-5150.

6. Defendant Amanda Bradley is the Magistrate who presided over this case at its inception. At all times relevant hereto she acted in concert with the other Defendants and under color of state law. She is sued in her official capacity.

7. Defendant Theresa M. Cisneros is the Sr. Judge employed by Douglas County Court House, who presided over the divorce hearings. At all times relevant hereto, she acted in concert with the other Defendants and under color of state law. She is sued in her official capacity.

8. Defendant Colorado Judicial Branch is the state governmental unit with disciplinary oversight of the above Defendants at all times relevant hereto as being contacted numerous times to seek remedies and relief in this case and then ignoring violations of Federal and Constitutional Law, State Statutes, Judicial Canon, and Rules of Professional Conduct. Citing *"Monell vs. New York City Dept. of Social Services"*, 436, US 658, 700-701, (1978), it is also permissible to sue county and state. The seventh circuit heard a case where students were suspended without due process and held that that they would be entitled to recover substantial "nonpunitive" damages because they had been denied procedural due process, even if the suspensions were justified, re *"Carey v. Piphus"*, 435 US 247, 253, (1978).

9. Judicial Immunity - The defendants through their separate actions worked together supporting each other in the wrongful deprivation of Plaintiff's Constitutional rights in the form of due process, civil liberties, property, freedom to worship, and a right to a speedy trial. As a matter of law, the findings of fact are not supported by the evidence. Judicial immunity in this case is not applicable as Judicial Officers in this case while acting in their official capacity were not allowed to deprive a litigant of their Constitutional rights. A Judge in West Virginia was denied Judicial Immunity for depriving a litigant in a divorce case their 4th Amendment right to protection from illegal search and seizure of property, *"Gibson v. Goldston"*, Civil Action 5:21-cv-00181. Also, in *"Haze v. Harrison"*, 961 F.3d 654, 660 (4th Cir. 2020) - "Qualified immunity shields government officials from liability for civil damages provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." Further "…What a

plaintiff must plead in order to state a claim, while Rul 8(a)(2) requires only a short and plain statement…showing that the pleader is entitled to relief…While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations…factual allegations must to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true… The need at the pleading stage is for allegations with enough heft to show that the pleader is entitled to relief." (quoting "Bell Atlantic Corp. v. Twombly", 550 U.S. 544, 570 (2007). A claim for relief is plausible when the plaintiff pleads facts adequate to draw a reasonable inference that the defendant is liable for the alleged misconduct, "Ashcroft v. Iqbal", 556 U.S. 662, 678 (2009).

10. In *"Mathews v. Eldridge"*, 424 U.S. 319 (1976) the US Supreme Court applied violations of procedural due process to include whether an individual would be harmed by being deprived of it and to weigh the risk of error under current procedures and the extent to which additional procedures might reduce risk of error. Plaintiff asks the court to apply both.

**Facts**

11. On 11/06/2019, Petitioner Amy Edwards (f/n/a Sorak), an officer of the court, filed for separation in Douglas County Colorado. Respondent was Kenneth Sorak, the Plaintiff.

12. On 12/06/2019, Plaintiff was served a temporary protection order. As a result of this action, Plaintiff was removed from the marital residence on 12/06/2019 with no job, and left homeless for 8 months.

13. On 12/10/2019, Plaintiff requested spousal support but no hearing was scheduled to address the issue just a blank court order entered into the record on 12/10/2019 by Magistrate Bradley denying the Plaintiff's due process right to be heard.

14. On 12/18/2019, Plaintiff was issued a permanent protection order by Magistrate Bradley for stalking in relation to the divorce case from an event that occurred three years prior. Plaintiff was only allowed 9 minutes to give testimony and defend his civil liberties, see Exhibit 1. Petitioner testified to picking up a recording device from under her car seat and placing it in the glove box as she traveled in the Plaintiff's vehicle to a weekend ski trip with a male friend. However, Magistrate Bradley concluded that the Plaintiff was "stalking" the Petitioner pursuant to CRS 18-3-602. Plaintiff disagrees. Petitioner presented no recordings or devices to the court. Erroneous finding of fact leading to contributory negligence occurred because Magistrate Bradley did not understand how a digital recorder works creating a failure of consideration prior to removing the Plaintiff's civil liberties. Summarizing, Petitioner testified that she found the device under her car seat, and put it in her glove compartment, see Exhibit 2. This is the only recording discussed and shows the Petitioner recorded herself.

15. Magistrate Bradley's order was erroneous and unreasonable in granting the Protection Order on these grounds. If her litmus test were to be applied to everyone who owns an iPhone, millions of people in the US would be in jeopardy of receiving a Protection Order due to being accused of taping a conversation using the voice recorder app, included on all iPhones, even without proof of a recording.

16. On 12/30/2019, litigants entered mediation that resulted in a Memorandum of Understanding (MOU) being created for settlement. This MOU would be an issue at final orders.

17. On 01/02/2020, Petitioner begins negotiating with the Plaintiff using the Protection Order as a bargaining chip for settlement in the separation case. This would be an issue at final orders.

18. On 06/02/2020, Plaintiff's Protection Order judicial review was denied by Judge Robert Lung.

19. On or about 05/01/2021, Plaintiff understood that the Protection Order appeal case #2020CA1247 was denied by the Appellate court for being filed before final orders.

20. On 05/24/2021, the Judicial Officers, Sr. Judge Robert Lung, Magistrate(s) Amanda Bradley, and Donna Stewart, involved in this case recused themselves due to an appearance of impropriety per Judicial Canon. During divorce proceedings, the Petitioner changed employment 3 times and took a job 4 months before final orders as a research attorney working directly for Senior Judge Robert Lung. Judge Lung was also Magistrate Amanda Bradley's supervisor at the time of the Protection Order hearings and, in paragraph #17 denied the Plaintiff's Judicial Review, allowing additional testimony by the Petitioner.

21. On or about 05/27/2021, Judge Teresa Cisneros was assigned to this case from El Paso County where the Petitioner had just left the District Attorney's office a month earlier to take the research attorney position with the Senior Judge on this case, Judge Lung.

22. On 09/09/2021 and 09/14/2021, final orders hearings were conducted by Judge Cisneros. Judge Cisneros heard false allegations regarding the Plaintiff's CRCP 16.2(e) Disclosures being received late and the JTMC not being jointly submitted 10 days prior to the final orders hearing. Plaintiff's attorney testified that the Petitioner's attorney was unavailable and did not return her calls. These are dilatory tactics testified as being used by the Petitioner's attorney multiple times. Plaintiff was allowed by the court to testify that Petitioner had failed to submit her CRCP 16.2(e) Disclosures but was then barred from continuing midway through his testimony. Petitioner did not file her CRCP 16.2(e) Disclosures as required by law for the entire three years prior to final orders making financial violation pleadings before the court impossible, as well as, defending against false statements made by the Petitioner, see Exhibit 3. Judge Cisneros heard testimony on this issue twice.

23. On 09/09/2021 and 09/14/2021, Plaintiff and Petitioner filed their exhibits for final orders within 2 hours of each other on the same afternoon, Judge Cisneros denied the Plaintiff's entry of evidence on the basis that it was late and then admitted the Petitioner's evidence that was also late, see Exhibit 4 and 5. Plaintiff's attorney tried to correct the record on both being late and Judge Cisneros told him that if he did not stop, she was going to fine him a lot of money, see Exhibit 6. This denied any opportunity for the Plaintiff through his attorney to submit further rebuttal exhibits and testimony for fear of retaliation from Judge Cisneros. Plaintiff was unable to enter into the record financial statements, spending summaries, violations of the injunction by Petitioner, documentation providing proof Petitioner and her attorney were using perjury to commit fraud. Derogatory financial allegations were made against the Plaintiff with no opportunity to be heard for defense or preservation on appeal.

24. On 09/09/2021 and 09/14/2021, Documented evidence suppressed by Judge Cisneros and the violation of Petitioner's CRCP 16.2(e) Disclosures were real evidence for rebuttal and financial violation pleadings. Judge Cisneros issued a CRS 14-10-107 violation regarding Plaintiff taking 401k funds out during divorce proceedings stating that Plaintiff would need to ask for permission form the court or the Petitioner. Plaintiff disagrees. CRS 14-10-107 states, for necessities of life, the other party was to be notified and an accounting made to the court at final orders; testimony confirmed that the funds were for necessities. Plaintiff was homeless for 8 months following being removed from the marital home. Plaintiff's attorney was threatened with huge fines and then denied the right to be heard through suppression of testimony and exhibits by Judge Cisneros. Plaintiff bank statements document the level to which Plaintiff tried to maintain marital bills paying $1,900.00 a month to make minimum payments on the joint credit card, vehicle loan, car insurance, and cell phone. Plaintiff was on unemployment making $2000.00 per month net.

25. On 09/09/2021, From #15 and #16 above, the MOU created detailed confidential negotiations covered in CRE Rule 408. Petitioner and her attorney made knowingly false statements alleging Plaintiff created the MOU for negotiations in 2020 and presented to the Petitioner through e-mail. Mr. Graf even offered testimony saying Plaintiff created the MOU. Judge Cisneros allowed Petitioner's attorney to upload the MOU into the record. Plaintiff's attorney objected citing CRE Rule 408 and "Yaekel v. Andrews" (2008), which was overruled by Judge Cisneros. Petitioner and her attorney lied under oath which Plaintiff has the original e-mails discussed in court.

26. On 09/14/2021, Petitioner's attorney, Greg Graf, also made a knowingly false statement alleging the Plaintiff violated the courts injunction from the Petitioner's second of three filings for divorce in August of 2019. Mr. Graf alleged service occurred on 08/16/19, a Friday night. Mr. Graf alleged the Plaintiff incurred charges on 08/17/19 in violation of the injunction. Plaintiff disagreed, he was served Sunday night, 08/18/19. Judge Cisneros took Judicial Note that the Summons for Petition for Divorce was served on Sunday night 08/18/19 at 8:17pm. This was blatant perjury to commit fraud. Citing Colorado case law regarding misrepresentations of material fact, in *Re People v. Lopez*, 980 P.2d 983, 984 (Colo. 1999). Similarly, in *Re People v Kolbjornsen*, 917 P.2d 277, 279 (Colo. 1996) who was suspended for one year and one day for testifying falsely to a tribunal under oath. And lastly, *Re People v. Rudman*, 948 P.2d 1022, 1026 (Colo. 1997) [**12] the court found considering mitigating circumstances, suspension for three years, rather than disbarment is appropriate for lawyer who engaged in intentional pattern of lies. Judge Cisneros states in her order that she found Plaintiff being homeless not credible and that he could have lived with his son at college. That was never testified to as part of the record in court, and son's college apartment had strict limitations that allowed only him to occupy the apartment.

27. Plaintiff was homeless moving from one house to another while trying to find employment. Early in 2020, Petitioner cancelled the Plaintiff's cell phone, car, and health insurance in violation of the injunction. Due to the Protection Order, Plaintiff had to use attorneys to negotiate through e-mail the release of his cell phone number that the Petitioner refused to release incurring further financial pressure. It cost Plaintiff a lot of money to keep his cell phone number which was necessary because all his contacts had his personal phone number as did numerous job applications in his search to obtain employment.

28. Mr. Graf joked in an e-mail dated 04/27/2020 to Plaintiff's attorneys that Plaintiff should pay his insurance and cellphone bill with some of the money from his 401k. Judge Cisneros was not fully informed in her final orders because she did not allow evidence and testimony to support an accurate finding of fact. Funding legal representation was only possible through withdrawals from the Plaintiff's 401k. Petitioner's attorney knew about the withdrawals which is all that was required by CRS 14-10-107.

29. On 09/14/2021, Plaintiff's attorney's argued necessities of life before Judge Cisneros but she chose to ignore the pleading.

30. No relief for spousal support was ever granted or heard by the court and Petitioner ignored all joint marital bills. Petitioner had all 3 properties in forbearance, rental income, and all properties under her control. Plaintiff could not occupy one of his residences because of the Protection Order.

31. Further Plaintiff derived no benefit from all the rents collected but in final orders was required to pay half of the forbearance (over $60k) on top of $2,046.15 a month child support back dated to the beginning of the divorce on 11/06/2019 which is more than the Plaintiff received in unemployment benefits.

32. Plaintiff has spent over $200k on legal costs as he faced large legal fees, Protection Order charges, properties that were in forbearance and being foreclosed upon, rent for a place to live, necessities of life while the Petitioner was not paying any mortgages, collecting rent, multiple streams of income, and no required retainer for her attorney, as testified too.

33. Petitioner failed to maintain the HOA fees for the Peabody rental property which caused the property to fall into foreclosure by the HOA. Plaintiff could not contact the Petitioner to discuss and had to incur significant attorney's fees to negotiate a settlement so the marital equity in the home would not be lost. All items were suppressed and never heard by Judge Cisneros. The equity post sale from Peabody was $151k.

34. On 09/14/2021, Petitioners' attorney Greg Graf, alleged that the Plaintiff had withdrawn $57,492 in the 5 months prior to the Petitioner filing for divorce on 11/06/2019. The Plaintiff testified that attorney Graf was knowingly dishonest before the Court. Exhibits would have shown Mr. Graf was aware and that the funds were used to pay marital debt. Judge Cisneros stated this false testimony had material impact on the Plaintiff's credibility.

35. On 09/09/2021 and 09/14/2021, Plaintiffs' attorney also tried to make the court aware through rebuttal exhibits showing Petitioner knowingly made false statements regarding renting the Sedalia Mountain cabin and the use of Plaintiff's pre-marital money to fund marital home renovations counter to the Petitioner's knowingly false testimony that she funded the entire renovations. Judge Cisneros awarded Petitioner the marital residence at a reduced price even though it was argued with case law that Plaintiff was allowed to use real estate websites to speculate on real estate value. Zillow said the house was worth $700,400.00 and Judge Cisneros imputed a value of $619,995.00.

36. On 09/09/2021 and 09/14/2021, Petitioner, automatically under the injunction imposed by her filing for divorce, spent over $100k on credit cards from 11/06/2019 to 12/31/2020. This

is a lot more than the $40k the Plaintiff took out of his 401k for legal fees and was found in violation of CRS 14-10-107 being assessed a heavy penalty in marital property by Judge Cisneros. Plaintiff does not know the full amount the Petitioner spent beyond $100k because she only submitted 21 out of the 36 months required for fulfillment Petitioner's CRCP 16.2(e) Disclosures. Of the 21 months disclosed, only 1 month was from 2021. Judge Cisneros quashed testimony of all these failures to comply at final orders.

37. On 09/09/2021, Petitioner was working for the Colorado Attorney General's office when she filed for separation on 11/06/2019 making $94k a year. She testified that she voluntarily left that position to work for the El Paso County DA's office making $75k a year starting on 04/05/2021. A month later, Petitioner took a position with the Douglas County Courts working directly for the Sr Judge on this case Robert Lung on 05/03/2021 making $69k a year. Petitioner is currently employed by the Douglas County Attorney's office which publishes on their website attorneys making between $120k to $140k a year. Petitioner took this position immediately after the final orders hearing. It is hard to get an accurate picture because the protection order prevents an exchange of salary without involving, the courts. It appears that the Petitioner, counter to her testimony in court, managed the maximum child support by suppressing her income during the divorce proceedings and then maximizing it once the hearings and property was disbursed.

38. Judge Cisneros sustained 16 of Petitioners objections and overruled 34 of the Plaintiffs objections. For the Petitioner, Judge Cisneros sustained 13 of Plaintiff's objections while overruling only 7 of Petitioners objections. In the process of the trial, the actions of the Petitioner's attorney in making lengthy objections were dilatory tactics to deprive the Plaintiff of his due process rights. Given the significant number of knowingly false statements and corresponding oral arguments, Plaintiff was denied his due process rights by chasing argument after baseless argument with Judge Cisneros giving ultimate credibility to Petitioners hearsay testimony.

39. On 09/15/2021, Judge Cisneros read her final order into the record making prejudicial comments referring to the Plaintiff using the term yuck. Entered into the record on 10/13/2021.

40. On 10/21/2021, Judge Cisneros presided over the Final Orders Status Conference and issued orders on 11/05/2021.

41. On 03/28/2022, Petitioner filed a contempt of court against the Plaintiff.

42. On or about 04/15/2022, Plaintiff understood that the second Protection Order appeal case# 2021CA1917 was denied because it was not timely from the initial order on 12/18/2019.

43. On 04/11/2022, Plaintiff's attorney sent a letter detailing bias against Plaintiff and a connection between Petitioner and Judge Cisneros. There has been a clear connection between all the Judicial Officers in this case. Judge Cisneros was made aware of the letter and was asked to recuse herself on 04/22/2022 in conjunction with Judicial Canon, Colorado Rules of Civil Procedure 98(c)(1) and 98(e) and Constitutional violations of Plaintiff's 14th

Amendment rights. She declined and chose to preside over the contempt hearings against the Plaintiff.

44. On 04/22/2022, Plaintiff requests a change of venue asking Judge Cisneros to recuse herself citing the letter and Judicial Canon violations. Request is denied by Judge Cisneros.

45. On or about 04/25/2022, Judge Cisneros aggressively looked to suppress the PRE-Report from governing authorities (DORA, Colorado Supreme Court, and COBAR) by denying Plaintiff's motion to release the PRE's Report which in one section described the Petitioner as having difficulty in the appropriate expression of anger. Plaintiff has video showing Petitioner was violent during their marriage.

46. On 05/17/2022, the initial advisement was heard by Judge Cisneros. Plaintiff's attorney asked for the Judge to recuse herself because Plaintiff had a right pursuant to CRCP 107(d)(1) a new Judge in a contempt proceeding. Request was denied saying she didn't initiate, doesn't apply.

47. On 08/08/2022, Petitioner and Plaintiff entered a settlement to drop contempt for the sum of $17,000 and agreeing to file for relinquishment of parental rights for minor daughter. Relinquishment was filed on or about 09/01/2022, case #2022JR30015. Petitioner stopped supporting relinquishment and caused the process to be vacated while no longer allowing father to see his daughter.

48. On 11/25/2022, Plaintiff filed contempt against Petitioner for cashing 4 checks totaling $9,811.61 written out to the Plaintiff, parenting issues, and failure to return his property. Plaintiff filed contempt charges against the Petitioner because she continues to knowingly mislead the court, violate final orders, withhold the Plaintiff's personal property, and cash the above checks offering no form of relief or remedy due to the Protection Order.

49. On 01/05/2023, Judge Cisneros presided over a Contempt Status Conference issuing orders on 01/06/2023. Judge Cisneros denied the Plaintiff's Motion to Dismiss the Permanent Protection Order and ordered an indefinite pause in the contempt proceedings against the Petitioner. Judge Cisneros failed to consider the Petitioner's use of the Protection Order to badger and harass the Plaintiff for over 3 years, including: attempting to frame the Plaintiff with violations of the Protection Order, threatening legal action contrary to collateral estoppel, sending copies of Plaintiff's Protection Order to family and friends, showing up at Plaintiffs church forcing him to leave, and leaving a threatening voice message on Plaintiff's phone to commit fraud, extort money, and commit perjury. Citing harassment by an officer of the court in *Re People v. Saxon*, 470 P.3d 927 (Colo. Displ. 2016), the court found that attorney Saxon repeatedly emotionally and physically harassed a romantic partner threatening criminal prosecution. Saxon was suspended for 3 yrs. from the practice of law. Petitioner made knowingly false statements to commit fraud by extracting personal financial gain out of the 19DR742 divorce case.

50. On 01/05/2023, there were three actions to address returning property to the Plaintiff none of which has proven to be successful. Judge Cisneros assigned 3 special masters to assist because of Petitioner's refusal to comply returning the Plaintiff personal property. All 3

masters declined to take the case, one citing that it was "inappropriate" to take the assignment. Inappropriate can only mean he knew the Petitioner and bears direct confirmation that Plaintiff has not receive a fair and impartial judicial hearing in Douglas County because the Petitioner knows the Judicial Officers. At this status conference, Judge Cisneros ordered the contempt issues brought by the Plaintiff against the Petitioner to be paused indefinitely. Judge Cisneros also stated that there was not anything urgent in the contempt citation even though Plaintiff has not been allowed to regain any of his personal property from the marital residence in over 3 years. The motion for contempt is his third attempt to recover his property, that property in some instances is irreplaceable, and to date no remedy has worked with the Petitioner refusing to co-operate to resolve this situation. In *Re Simpson v. Simpson*, 151 Colo. 88 (Colo. 1962) the court reversed the trial court's judgement, vacated the restraining order and returning the property that belonged to him. In *Re Estate of Elliott*, 993 P.2d 474 (Colo. 2000), the Colorado Supreme Court found that, "It is the duty of a trial court to enforce its own orders". As an officer of this court, it is apparent that Petitioner is using the Protection Order, and her position as an officer of this court, as a tool for badgering, and extorting property from the Plaintiff.

51. On 01/05/2023, Petitioner testified that the Plaintiff and his attorney were coercing her to vacate the Protection Order. These are knowingly false allegations by the Petitioner. From December 2019 (12 days after the Protection Order was made permanent) through February 2020, Petitioner negotiated with Plaintiff using vacating the Protection Order as a bargaining chip to obtain a favorable division of marital property. Further, Petitioner had sent Plaintiff's attorney e-mails in December of 2022 and January of 2023 negotiating to drop contempt charges against her in exchange for vacating the Protection Order.

52. On 01/05/2023, Petitioner also requested that the court expand the Protection Order to harass the Plaintiff by including his place of worship. Judge Cisneros denies this request and then offers the Petitioner advice that Plaintiff must keep 100 yards away from the Petitioner wherever she is found offering that as an alternative remedy to including Plaintiff's place of worship in the Protection Order. This is an indirect usurpation of the Plaintiff's 1st Amendment right to Freedom of Worship.

53. On 01/05/2023, Judge Cisneros sought to encourage instigating the Plaintiff by allowing the Petitioner to violate Federal and State Law including: 18 USC 1621 Perjury, 18 USC 1001 False Statements, 18 USC 1341 Fraud, 18 USC 1951 Extortion and 18 USC 1505 Obstruction by impeding the due and proper administration of the law. This is also in violation of C.R.S. 18-9-111 Harassment and C.R.S. 18-3-602 Stalking statutes. Real evidence exists in support of these allegations.

54. On 07/27/2023, Plaintiff dropped the relinquishment case.

55. On 08/03/2023, Plaintiff advised Judge Cisneros that relinquishment had been vacated in response to a delay prevention order.

56. On 08/25/2023, Judge Cisneros denied the Plaintiff's request for a Child Legal Representative (CLR), with no response from the Petitioner noted, requested by the Guardian ad litem (GAL) in the relinquishment case.

57. Plaintiff has not been allowed to parent the minor daughter in this case. Petitioner had informed minor's school, prior to final orders, that the Plaintiff no longer had parental rights. After an investigation, which abruptly ended when the Petitioner could not provide the alleged court order depriving the Plaintiff of his parental rights, the school reinstated fathers parent portal on 02/13/2021 so he could monitor his daughter's educational progress. Presently, minor daughter has been in violation of truancy missing close to 100 days in 3 years, 70 days over the maximum allowed absences. Minor daughter is also failing scholastically, school report cards say she would do better if she showed up for class.

## First Claim

*Deprivation of 4th and 14th Amendment under 42 U.S.C. § 1983--Against All Defendants*

58. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

59. Defendants at all times relevant to this action were acting under color of state law.

60. Defendants unlawfully deprived Plaintiff of his equal protection under the law, civil liberties and property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

61. Defendant Amanda Bradley made an unreasonable (see Paragraph #15) and erroneous (see Paragraph #14) protection order that deprived the Plaintiff's civil liberties and personal property in violation of the Fourth Amendment as incorporated and applied to the states by way of the Fourteenth Amendment to the Constitution of the United States. Given that the Petitioner admitted to picking up the recording device from under her seat and recording herself and no recording or device has ever been submitted before the court. As a matter of law, the findings of fact are not supported by the evidence.

62. At all times acting as the Judicial Officer in this case, Defendant Theresa Cisneros acted in such a manner as to ascribe privilege and bias towards the Petitioner thereby depriving the plaintiff of personal property without court order and without providing an opportunity for the plaintiff to be heard and failure to consider both in violation of the 4th and 14th Amendment. In paragraph #23, Judge Cisneros admitted Petitioner's exhibits and denied the Plaintiff's exhibits. Technically, no exhibit should have been admitted by the court including the PRE-Report which was incoherent at best with numerous contradictions considering the PRE's notes making it useless in determining the best interests of the minor child. Judge Cisneros was informed and the certificate of compliance supplemental disclosures showed Petitioner only provided 1 month of financial statements from 06/2020 to 09/2021. Pursuant to CRCP rule 16.2 (e) , Form 35.1 and the pre-trial order none of the Petitioners exhibits should have been allowed. As a matter of law, the courts findings of fact do not meet the requirements of the rules of this court.

63. Judge Cisneros failed to consider the Petitioner not submitting her CRCP Rule 16.2(e) disclosures for the entire 3 years prior to final orders, see paragraph #22. This made a rebuttal impossible as Plaintiff did not have access to the entire 3 years of the Petitioner's financial statements. It was also counter to the pre-trial order which should have excluded them.

64. Defendant Judge Cisneros failed to consider the violations of the Plaintiff's equal protection of the laws within her jurisdiction pursuant to the 14th Amendment. In paragraph #49 and #52, Judge Cisneros further failed to hold the Petitioner accountable under Federal and State Law, as outlined in paragraph #53. These actions led to contributory negligence depriving the Plaintiff relief under the law.

65. Defendant Judge Cisneros allowed multiple instances of perjury by the Petitioner and her attorney, see paragraph #51 and #53. In paragraph #25, Judge Cisneros allowed knowingly false testimony concerning the mediation MOU and then, in violation of Rule 408, allowed Petitioner's attorney to upload it into the record. Judge Cisneros also heard knowingly false testimony described in paragraph #26 and took Judicial note that it was false yet did not hold Petitioner's attorney accountable. Similarly in paragraph #34, Mr. Graf, the Petitioner's attorney, made knowingly false statements regarding $57,492 in transfers prior to the divorce. Judge Cisneros took knowingly false testimony and allowed them to impugn the Plaintiff's credibility, a deprivation of the Plaintiff's due process rights.

66. Defendant Judge Cisneros further punished Plaintiff with violations of CRS 14-10-107 removal of funds for necessities. In paragraph #13, #24, #27, #28-#33, and #35 all address the details around the plaintiff's financial situation, marital bills he was covering, employment he was seeking, violations of the injunction by Petitioner, failure of the court to consider spousal support, knowledge by the Petitioner's attorney of the CRS 14-10-107 withdrawals and his client breaking the injunction, and the large number of income streams with no bills being covered by the Petitioner. These issues were in violation of the Plaintiff's 14th, 4th, 6th and 8th amendment rights. It can be argued that by remedial damages punished the Plaintiff for exercising his 6th amendment right to access to the law in the form of an attorney.

67. Petitioner knew all the Judicial Officers in this case who had to recuse themselves as detailed in paragraph #20. In paragraph #21, Defendant Judge Cisneros was assigned to the case. In paragraph #43, Plaintiff's attorney sent a letter detailing an appearance of impropriety between the Petitioner and Judge Cisneros. In paragraph #44, change of venue was requested and denied.

68. Defendant Colorado Judicial Branch was informed of the violations of State, Federal and Constitutional law in multiple complaints to the Commission for Judicial Review, COBAR, and DORA. Judge Cisneros then denied Plaintiff's request to release the PRE-Report to the above agencies including the Colorado Supreme Court, see paragraph #45. The Colorado Judicial Branch denied all Plaintiff requests for relief and remedy depriving him of his 1st Amendment right to redress grievances with government.

69. Defendant Judge Cisneros heard the Petitioner in paragraph #37, detail job changes during the divorce proceedings. Petitioner went from $94k down to $69k in the span of 3 months prior to final orders. Current salary is almost double and entered a few months after final orders. Petitioner has actively tried to remove father from minor daughters' life while maintaining child support. See paragraph #47 and #57. It would be 18 USC 1621 Fraud to use deceptive means to exact personal gain.

70. Plaintiff has spent over $200k on his legal fees throughout these hearings. Real monetary damages, not including legal fees, were assessed to the Plaintiff in total the sum of $600k.

71. Judge Cisneros in paragraph #35 gave the Petitioner no less than $80,405.00 in equity in the marital residence. In paragraph #35, Plaintiff's personal property has not been returned totaling $75k. In paragraph #30, 31, 32 and 35, there is detail of all the rents that had been failed to be considered totaling $95,300.00 (Some extrapolation because Petitioner did not give full 16.2 disclosures). Judge Cisneros ordered the $152,000 proceeds from Peabody rental sale to be used to pay Joint marital credit card and unknown credit cards for the Petitioner, depriving Plaintiff $76,000 in lost equity, see paragraph #33. Temporary Child Support was ordered retroactive to beginning of divorce in the amount of $54,699.90, even though Plaintiff made less than what was ordered due to unemployment. None of the Plaintiff's expenses were considered in the amount of $30,800.00 for rent and Petitioner being in forbearance yet testifying that she was struggling financially, see paragraph #30 and #33. In paragraph #24, #28 and #36, cost Plaintiff $20k due to CRS 14-10-107 violations that Judge Cisneros erroneously said she never heard testimony failing to consider evidence. Other financial concerns that failed to be considered include: 4 checks cashed by Petitioner in the Plaintiff's name equal to $9,812, Retirement disparity $41,512, BMW X5 bought with Plaintiff's pre-marital money, Honda worth $10k, Legal fees for Peabody rental foreclosure $12k, co-mingled VA funds worth $54k and home improvement expenses not considered with pre-marital money roughly $200k. This is a deprivation of plaintiff's 14th amendment right to due process and 4th amendment right to illegal seizure of personal property.

### Second Claim

*Deprivation of 4th and 6th Amendment under 42 U.S.C. § 1983--Against Defendants Cisneros and Colorado Judicial Branch*

72. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

73. Defendants at all times relevant to this action were acting under color of state law.

74. Defendant Judge Cisneros usurped the Plaintiff's 6th amendment right to a speedy and public trail for the cashing of 4 checks by the Petitioner, see paragraph #48 and #49.

75. Defendant Judge Cisneros usurped the Plaintiff's 4th and 6th amendment right to a speedy and public trail for the refusal by the Petitioner and unsuccessful attempts by the court to return Plaintiff's property, see paragraph #50. At all times acting as the Judicial Officer in this case, Defendant Theresa Cisneros acted in such a manner as to ascribe privilege and bias towards the Petitioner thereby depriving the plaintiff of personal property without court order and without providing an opportunity for the Plaintiff to be heard both in violation of the 4th and 14th Amendment.

76. Defendant Colorado Judicial Branch was informed of the violations of State, Federal and Constitutional law in multiple complaints to the Commission for Judicial Review.

## Third Claim

*Deprivation of 1st Amendment under 42 U.S.C. § 1983-- Against Defendant Cisneros*

77. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

78. Defendants at all times relevant to this action were acting under color of state law.

79. Defendant Judge Cisneros usurped the Plaintiff's 1st amendment right of freedom to worship, see paragraph #52 and #53.

## Request for Relief

WHEREFORE, Plaintiff prays for the following relief:

80. On his first claim, a judgment for removal of the Protection Order, a parenting and child support order hearing, compensatory damages in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against all Defendants;

81. On his second claim, a judgment for a change of venue for 19DR742 to the Federal District Court, an immediate trial to address the contempt issues before the state court that has been paused for close to a year. Compensatory and punitive damages in an amount to be determined at trial, against Defendants Cisneros and the Colorado Judicial Branch;

82. On his third claim, a judgment for compensatory damages in an amount to be determined at trial, against Defendant Cisneros.

83. A jury trial on all appropriate issues;

84. An award of costs and expenses against the Defendants;

85. Any and all other relief this Court may deem appropriate.

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
Plaintiff's signature

14- September - 2023
_____
Date